**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE GRAND JURY INVESTIGATION,
USAO No. 2018R01761 (Grand Jury
Subpoenas To Pat Roe),

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

                    v.

DOE COMPANY,
            *Defendant-Appellant*,

                    v.

PAT ROE; JOHN DOE,
                    *Movants.*

No. 19-10187

D.C. No.
3:19-xr-90017-
CRB-1

OPINION

IN RE GRAND JURY INVESTIGATION,
USAO No. 2018R01761 (Grand Jury
Subpoenas To Pat Roe),

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee*,

v.

DOE COMPANY,
           *Defendant-Appellant.*

No. 19-10261

D.C. No.
3:19-xr-90017-
CRB-1

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted November 14, 2019
San Francisco, California

Filed July 27, 2020

Before:  Kim McLane Wardlaw, William A. Fletcher,
and Richard Linn,* Circuit Judges.

Opinion by Judge W. Fletcher

---

* The Honorable Richard Linn, United States Circuit Judge for the
U.S. Court of Appeals for the Federal Circuit, sitting by designation.

# SUMMARY**

## Grand Jury Subpoenas

In two appeals arising from a federal grand jury investigation into the acquisition of one company by another, the panel (1) dismissed for lack of appellate jurisdiction the Doe Company's appeal seeking review of the district court's order enforcing Doe Company partner Pat Roe's compliance with a grand jury subpoena, and (2) affirmed the district court's orders enforcing the Doe Company's compliance with a grand jury subpoena and holding the Doe Company in contempt for failure to produce the subpoenaed documents in its possession.

Dismissing for lack of jurisdiction the Doe Company's interlocutory appeal from the enforcement order against Roe, the panel clarified that under *Perlman v. United States*, 247 U.S. 7 (1918), this court may entertain interlocutory appeals from orders enforcing grand jury subpoenas only when they require production of materials that are claimed to be privileged or otherwise legally protected from disclosure. Because the Doe Company made no such claim, this court lacks jurisdiction under *Perlman*. The panel noted that the Doe Company has not sought a writ of mandamus and that review is unavailable under the general collateral order doctrine.

The panel affirmed the district court's orders denying the Doe Company's motions to quash a grand jury subpoena and

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

holding the Doe Company, which is based outside of the United States, in contempt. The panel held that, taken together, the district court's findings adequately support its determination that it had in personam jurisdiction over the Doe Company. The panel also held that it was fair, reasonable and just to imply that an individual—who was identified as the General Counsel for a firm in which the Doe Company retained a significant ownership interest and who stated that he could accept service for the Doe Company— had authority to receive, at a United States address, service on behalf of the Doe Company.

## COUNSEL

Richard M. Strassberg (argued), James D. Gatta, and Elizabeth S. David, Goodwin Procter LLP, New York, New York; Andrew Kim, Goodwin Procter LLP, Washington, D.C.; for Defendant-Appellant.

Adam A. Reeves (argued), William Frentzen, and Robert S. Leach, Assistant United States Attorneys; Merry Jean Chan, Chief, Appellate Section, Criminal Division; David L. Anderson, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

A federal grand jury has been investigating the acquisition of one company by another. The acquired company, through its officers and shareholders, is alleged to have provided fraudulently misleading information about its true value, leading the acquiring company to pay a substantially inflated price. The grand jury has so far issued two indictments. The grand jury issued subpoenas to a third company, Doe Company ("the Company"), and to Pat Roe, a former officer at the acquired company and a current partner at the Company. The Company moved to quash the subpoenas.[1]

The district court denied the Company's motion to quash and ordered compliance by both the Company and by Pat Roe. The Company has appealed that order (No. 19-10187). The district court then ordered the Company and Roe to show cause why they were not in contempt. Roe responded by agreeing to produce the documents in Roe's possession. The Company declined to produce the documents in its possession, and the district court held the Company in contempt. The Company has also appealed that order (No. 19-10261). We consolidated the Company's appeals and stayed the district court's enforcement order against Roe.

We conclude that we lack appellate jurisdiction to review the district court's enforcement order directed to Roe. We dismiss that part of the appeal. We have jurisdiction to review the district court's enforcement orders directed to the

---

[1] All documents and briefs in this matter have been filed under seal. This opinion does not use the parties' true names.

Company and holding the Company in contempt. We affirm those orders.

## I. Standard of Review

We review a district court's denial of a motion to quash a grand jury subpoena and its order of contempt sanctions for an abuse of discretion. *In re Grand Jury Subpoena, No. 16-03-217*, 875 F.3d 1179, 1183 (9th Cir. 2017). Underlying factual findings are reviewed for clear error. *Id.* "In reviewing decisions of the district court, we may affirm on any basis supported by the record . . . ." *In re Frontier Props., Inc*., 979 F.2d 1358, 1364 (9th Cir. 1992); *see also Schweiker v. Hogan*, 457 U.S. 569, 585 n.24 (1982).

## II. Enforcement Order Against Pat Roe

The Company seeks to bring an interlocutory appeal from the part of the district court's enforcement order that is directed to Pat Roe. For the reasons that follow, we do not have appellate jurisdiction.

We generally have jurisdiction to review only "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. Pretrial discovery orders, including denials of motions to quash grand jury subpoenas, are not final decisions under § 1291. *United States v. Ryan*, 402 U.S. 530, 532–33 (1971). Absent certification by the district court, a party seeking review must either seek mandamus, or disobey the order and then appeal the resulting contempt citation. *See*, *e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–12 (2009) (no appellate jurisdiction over a pretrial discovery order seeking information claimed to be protected by the attorney-client privilege); *In re Grand Jury Subpoena*

*Issued to Bailin* ("*Bailin*"), 51 F.3d 203, 205 (9th Cir. 1995) (no appellate jurisdiction over denial of motion to quash a subpoena until person subpoenaed refuses to comply and is held in contempt).

The finality requirement is not a mere formality. It is especially important in criminal cases, where interlocutory appeals can impede the speedy and effective administration of the criminal justice system. *Ryan*, 402 U.S. at 532–33. "The appealability of the denial of a motion to quash is particularly inappropriate in the grand jury setting." *In re Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d 231, 236 (9th Cir. 1987). A grand jury may consider an extraordinarily broad range of evidence, and "the scope of [its] inquiries is not to be limited narrowly." *United States v. Calandra*, 414 U.S. 338, 343 (1974); *id.* at 354–55 (grand jury may consider illegally obtained evidence); Fed. R. Evid. 1101(d) (Federal Rules of Evidence generally do not apply to grand jury proceedings). Moreover, while the subpoena awaits review, "targets are free, memories of other witnesses are fading, evidence is disappearing, the grand jury may have difficulty proceeding against other targets, and events may escape scrutiny as the statute of limitations takes its toll." *In re Klein*, 776 F.2d 628, 631 (7th Cir. 1985)

## A. *Perlman*

The Company argues that we have appellate jurisdiction over its interlocutory appeal under the so-called *Perlman* doctrine. *See Perlman v. United States*, 247 U.S. 7 (1918). We disagree.

The Supreme Court has carved out a "narrow exception" under *Perlman* for cases in which documents sought by the

grand jury are subject to a claim of privilege. *Bailin*, 51 F.3d at 205. In *Perlman*, the trial court ordered the clerk of court, who retained possession of Perlman's documents from a previous case, to produce the documents to a grand jury investigating Perlman. Perlman appealed, claiming that disclosure would violate, inter alia, his Fifth Amendment privilege against self-incrimination. The Supreme Court allowed the appeal on the ground that Perlman would otherwise have been "powerless to avert the mischief of the order." *Perlman*, 247 U.S. at 13. As the Court later explained, to have held otherwise in *Perlman* "would have made the doctrine of finality a means of denying Perlman any appellate review of his constitutional claim." *Cobbledick v. United States*, 309 U.S. 323, 328–29 (1940).

"We have interpreted *Perlman* to mean that a discovery order directed at a disinterested third-party custodian of privileged documents is immediately appealable because the third party, presumably lacking a sufficient stake in the proceeding, would most likely produce the documents rather than submit to a contempt citation." *United States v. Griffin*, 440 F.3d 1138, 1143 (9th Cir. 2006) (internal quotation marks omitted). Because, as in *Perlman*, a person seeking to protect privileged information in the hands of a third party cannot expect that third party to submit to a contempt citation, that person is "powerless to avert the mischief of the order" unless an interlocutory appeal is available.

We have sometimes described the *Perlman* rule in shorthand fashion, omitting recitation of the requirement that the challenged order seeks privileged documents. We have focused, instead, on the question whether the third party to whom the subpoena is issued would be willing to risk contempt. *See In re Optical Disk Drive Antitrust Litig.*,

801 F.3d 1072, 1076 (9th Cir. 2015) ("The *Perlman* rule has been formulated as providing a right of immediate appeal by a party aggrieved by a district court discovery order whenever the order requires a third party to produce evidence or documents and that third party cannot be expected to go into contempt merely to create a final appealable order."); *In re Grand Jury Subpoenas Duces Tecum*, 695 F.2d 363, 365 (9th Cir. 1982); *cf. Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11 (1992) (under *Perlman*, "a discovery order directed at a disinterested third party is treated as an immediately appealable final order"); *United States v. Amlani*, 169 F.3d 1189, 1192 (9th Cir. 1999) (a third party who is a former attorney, as distinct from a current attorney, cannot be expected to risk a contempt citation).

Despite our abbreviated statements of the doctrine, the rule under *Perlman* is that we may entertain interlocutory appeals from orders enforcing grand jury subpoenas only when they require production of materials that are claimed to be privileged or otherwise legally protected from disclosure. The vast majority of our cases applying *Perlman* involve orders issued to attorneys seeking information protected by the attorney-client privilege.  Wright & Miller, 15B Federal Practice and Procedure § 3914.23 (2d ed. 2020 update) (noting that these comprise the "largest identifiable category" of *Perlman* cases); *see, e.g.*, *United States v. Krane*, 625 F.3d 568, 571–72 (9th Cir. 2010).  Other cases allege other evidentiary privileges. *See, e.g.*, *United States v. Gonzalez*, 669 F.3d 974, 977 n.2 (9th Cir. 2012) (joint defense privilege); *Griffin*, 440 F.3d at 1143 (marital communications privilege); *In re Grand Jury Proceedings*, 867 F.2d 562, 563 (9th Cir. 1989) (psychotherapist-patient privilege), *abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996). Some cases, including *Perlman*, involve a constitutional

privilege.  *Harris v. United States*, 413 F.2d 316, 317 (9th Cir. 1969) (Fifth Amendment privilege against self-incrimination).  Finally, a few cases involve some other legal claim against disclosure.  *See, e.g.*, *In re Optical Disk Drive Antitrust Litig.*, 801 F.3d at 1074, 1076 (information allegedly protected under Fed. R. Crim. P. 6(e)); *In re Grand Jury Subpoena Served on Meserve, Mumper & Hughes*, 62 F.3d 1222, 1223 (9th Cir. 1995) (information protected under court order).

The subpoenaed documents need not actually be privileged to warrant interlocutory review.  A court may properly assume jurisdiction under *Perlman* even if it later concludes on the merits that the information is not actually privileged.  *See, e.g.*, *In re Grand Jury Subpoenas Duces Tecum*, 695 F.2d at 365 (reviewing under *Perlman* but concluding attorney-client privilege did not protect information on fee arrangements).  The logic of *Perlman* permits review in such cases, for if a document produced to the grand jury is later held to have contained privileged information, protection provided by the privilege will have been irretrievably lost.

It is uncontested in the case before us that the information in the documents held by Pat Roe is not privileged.  The Company notes, correctly, that in many cases we have applied *Perlman* without addressing the privilege issue.  The Company therefore argues that there is no requirement that the materials at issue be allegedly privileged for *Perlman* to apply.  The Company misreads our cases.  Our failure to mention a claim of privilege does not mean that it was not a requirement.  Quite the contrary.  In virtually all of our *Perlman* cases, there was no dispute that the information was

alleged to be privileged, which meant that we felt no need to discuss the requirement of a claim of privilege.

More importantly, the privilege requirement explains why *Perlman* exists to create interlocutory review in a context that otherwise heavily disfavors it. A grand jury has "wide latitude to inquire into violations of criminal law" and is "generally . . . unrestrained" by procedural or evidentiary rules that govern criminal trials. *Calandra*, 414 U.S. at 343. As the Supreme Court has recognized, however, a claim of privilege is one of the only non-procedural grounds on which a subpoenaed individual may resist a grand jury subpoena. *Id.* at 346. *Perlman* exists to protect that limited right. It does not protect against any and all asserted "mischiefs" resulting from a grand jury subpoena, but it does protect against the specific harm of compelled disclosure to the grand jury of information protected by a valid privilege. Because an appeal after final judgment would come too late to remedy that harm, *Perlman* permits immediate review in this narrow case.

The Company invokes *Perlman* on the ground that it has a "cognizable" "ownership interest" in the documents. In the Company's view, its ownership of the documents gives it the right to conceal information the documents contain. An ownership interest, standing alone, is not a sufficient defense against disclosing information to a grand jury, whose proceedings are "secre[t]" and "kept from the public eye," *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979); *see* Fed. R. Crim. P. 6, and which considers a range of evidence "generally . . . unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials," *Calandra*, 414 U.S. at 343; *contrast United States v. Hubbard*, 650 F.2d 293, 311 n.67

(D.C. Cir. 1980) (reviewing claim where order sought *public* disclosure of sealed information). The Company mistakenly focuses on the "ownership interest" the petitioner had in *Perlman*. That interest was relevant only insofar as it involved the petitioner's Fifth Amendment privilege against self-incrimination. *See Cobbledick*, 309 U.S. at 328–29. The Company makes no such claim here.

Under the Company's argument, any company subject to a grand jury investigation could cite an "ownership interest" in documents subpoenaed from its employees, and could thereby conceal from the grand jury information that might reveal wrongdoing by the company. Accepting the Company's argument would expand *Perlman* far beyond the "narrow exception" it created to the finality requirement. *Bailin*, 51 F.3d at 205; *In re Grand Jury Subpoena Served Upon Niren*, 784 F.2d 939, 942 (9th Cir. 1986) (per curiam) ("[U]ntil the Supreme Court informs us that *Perlman* applies to more than a 'limited class of cases,' it is not our prerogative to enlarge the exception . . . .") (quoting *In re Sealed Case*, 655 F.2d 1298, 1302 (D.C. Cir. 1981)).

We recognize that *Perlman* was decided one hundred years ago. But the Supreme Court has given us no reason to suspect that it is no longer good law, or that its essential contours have changed. *See, e.g.*, *Gravel v. United States*, 408 U.S. 606, 608 n.1 (1972) (noting appeal proceeded under *Perlman* because Senator intervenor could not expect third parties to whom subpoenas were issued to protect privileges under the Speech or Debate Clause); *United States v. Nixon*, 418 U.S. 683, 691 (1974) (discussing *Perlman*); *Cobbledick*, 309 U.S. at 328–29; *see also Krane*, 625 F.3d at 572–73 (holding *Perlman* remains good law after *Mohawk Industries*, 558 U.S. 100 (2009)). Our sister circuits generally

understand *Perlman* as we do, limiting it to claims of privilege. As the Eighth Circuit has explained, "[t]he [*Perlman*] exception is limited to an appeal by the privilege holder." *United States v. Beltramea*, 831 F.3d 1022, 1024 (8th Cir. 2016); *see also FDIC v. Ogden Corp.*, 202 F.3d 454, 459–60 (1st Cir. 2000); *United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013); *In re Naranjo*, 768 F.3d 332, 344 (4th Cir. 2014); *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 878 n.3 (5th Cir. 1981); *Holt-Orsted v. City of Dickson*, 641 F.3d 230, 237–38 (6th Cir. 2011); *United States v. Calandra*, 706 F.2d 225, 228 (7th Cir. 1983) (per curiam); *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 485 (10th Cir. 2011); *In re Grand Jury Proceedings*, 832 F.2d 554, 558–59 (11th Cir. 1987); *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985).

Only the Third Circuit has read *Perlman* as requiring only a disinterested third party, irrespective of privilege. In *In re Grand Jury* ("*Schmidt*"), 619 F.2d 1022, 1025 (3d Cir. 1980), an employer brought an interlocutory appeal of a denial of a motion to quash grand jury subpoenas issued to its employees, contending that the grand jury was being used for an improper purpose. *Id.* Making no mention of privilege, the Third Circuit held that it had jurisdiction because *Perlman* permitted appeals in cases of third-party subpoenas. *Id.* The Second Circuit has expressly disavowed *Schmidt*. *See In re Subpoenas to Local 478, Int'l Union of Operating Eng'rs & Benefit Funds* ("*Local 478*"), 708 F.2d 65, 72–73 (2d Cir. 1983); *Punn*, 737 F.3d at 6 ("The mere fact . . . that a movant cannot himself precipitate immediate review through a contempt proceeding, does not end the finality inquiry."). "Unlike motions to quash that seek to preserve privileges of the movant against possible disclosure by a third-party witness, and thereby to prevent immediate, irreparable harm,

motions that allege improper use of the grand jury . . . ultimately seek to prevent trial prejudice." *Punn*, 737 F.3d at 9–10. We agree with the Second Circuit that harms resulting from improper purpose, unlike harms resulting from wrongful disclosure of privileged information, can later be addressed at trial or on appeal. *See id.*

If we have been unclear in our prior cases in stating that a claim of privilege is essential to a *Perlman* appeal, we clarify today that it is. In seeking interlocutory review of a court order enforcing a grand jury subpoena, an appellant must assert a claim of evidentiary privilege or some other legal claim specifically protecting against disclosure to the grand jury. The appellant must claim a "right . . . to secrecy of the transaction" that can be vindicated only through interlocutory review. *In re Subpoena to Testify Before Grand Jury*, 39 F.3d 973, 975 (9th Cir. 1994). Because the Company makes no such claim, we do not have jurisdiction under *Perlman*.

## B. Alternate Grounds

Alternate grounds for appellate jurisdiction are not available. The Company has not sought a writ of mandamus under 28 U.S.C. § 1651. Mandamus is reserved for "exceptional circumstances," which we do not find here. *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Litig.*, 821 F.2d 1422, 1425 (9th Cir. 1976). Finally, review is unavailable under the general collateral order doctrine. *See Mohawk Indus., Inc.*, 558 U.S. at 114.

### III.  Enforcement Order Against the Company and Contempt Citation

The Company appeals the district court's orders denying its motions to quash the subpoena and holding the Company in contempt.  The Company is based outside the United States, and the grand jury subpoena was served on a non-Company employee in the United States.  The Company argues that the district court lacked in personam jurisdiction and that service of the subpoena was improper.  We reject both arguments.

### A.  In Personam Jurisdiction

The parties do not dispute that in the grand jury subpoena context, the "reasonable probability" test adopted by the Second and D.C. Circuits governs a determination of in personam jurisdiction.  *See In re Marc Rich & Co., A.G.* ("*Marc Rich*"), 707 F.2d 663, 670 (2d Cir. 1983), *cert. denied* 463 U.S. 1215 (1983); *In re Sealed Case*, 832 F.2d 1268, 1274 (D.C. Cir. 1987), *abrogated on other grounds by Braswell v. United States*, 487 U.S. 99 (1988).  We agree with our sister circuits that this is the proper standard.

Under this standard, the government need only show "that there is a reasonable probability that ultimately it will succeed in establishing the facts necessary for the exercise of jurisdiction" over a nonresident alleged to have violated federal criminal law.  *Marc Rich*, 707 F.2d at 670.  The relevant forum is not the state in which the grand jury is empaneled but "the entire United States," which is itself "injuriously affected" by the criminal offense.  *Id.*  "Under such circumstances, . . . the occurrence of the offense itself is sufficient to support a claim of jurisdiction, provided

adequate notice and an opportunity to be heard has been given." *Id*. at 667–68.

The district court found that several people who had profited from the sale of the acquired company used their personal funds shortly thereafter to help found the Company. An internal memorandum stated that the Company's start-up team—which included senior officials from the acquired company whom the grand jury has already indicted—would invest substantial amounts of their own money in the Company. A Company employee also submitted an affidavit stating that the Company was capitalized through equity contributions.

The Company objects that the internal memorandum was a draft document that was never implemented, and it relies on an affidavit from a Company employee so stating. The district court considered the record before it and found that the affidavit did not override other evidence in the record. We conclude that the district court did not clearly err in so finding. *In re Grand Jury Subpoena*, 875 F.3d at 1183.

The district court also found that "the financial structure of the entities at issue was enough to create a likelihood of criminal conduct." The government alleges that money from the acquisition may have been laundered through the Company, and later laundered again through what was initially a wholly owned subsidiary of the Company ("the Firm"). There is evidence in the record that the Company and the Firm at one time shared the same office in the United States, and that there is substantial overlap between the employees of the Company and the Firm.

We conclude that, taken together, these findings adequately support the district court's determination that it had in personam jurisdiction over the Company.

## B.  Service of Process

The district court also concluded that service of process on the Company was proper.  Until a specified month in 2018, the Company's website listed its address as an office suite at a particular address in the United States.  Four days into the following month, an FBI agent attempted to serve the grand jury subpoena at this address.  When at this address, the FBI agent spoke with a particular individual, identified as the General Counsel for the Firm, who accepted the papers and stated that he "could accept service for [the Company]."  At that point, the Company no longer wholly owned the Firm, but it retained a significant ownership stake.  Within a month, counsel for the Company contacted the United States government regarding the subpoena.  The Company objects to service of process on the ground that the Firm is a distinct entity from the Company, and that the General Counsel worked for the Firm rather than the Company.

Service to a corporation "is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process."  *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  Instead, service can be made "upon a representative so integrated with the organization that he will know what to do with the papers."  *Id.* (quoting *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F. Supp. 1237, 1251 (S.D.N.Y. 1977)).  "Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair,

reasonable and just to imply the authority on his part to receive service." *Id.* (same).

The General Counsel for the Firm was a representative "so integrated with the [Company] that he [knew] what to do with the papers." He confirmed to the FBI agent that he could receive process on behalf of the Company, and the Company's counsel contacted the government about the papers shortly thereafter. *See id.* ("[A]ctual receipt of process by the correct person may be a factor in finding process valid when there are other factors that make process fair."); *Henderson v. United States*, 517 U.S. 654, 672 (1996) ("[T]he core function of service is to supply notice of the pendency of a legal action . . . ."). Under these circumstances, it is "fair, reasonable and just to imply the authority" of the General Counsel to receive service on behalf of the Company.

Conclusion

We dismiss for want of appellate jurisdiction the Company's appeal seeking review of the district court's enforcement order against Pat Roe. We affirm the district court's enforcement order and contempt citation against the Company.

**DISMISSED** in part; **AFFIRMED** in part.