# PERLMAN *v.* UNITED STATES.

APPEAL FROM AND ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 752. Argued April 18, 1918.—Decided May 6, 1918.

An order of the District Court allowing the District Attorney's application for the custody of documentary and other exhibits, to be used in criminal proceedings against a witness in a private suit in which they were used and impounded, and overruling the witness' objection based on grounds of constitutional privilege and his prayer to have them restored to him as his property, is a final order, and the right of the objecting party to appeal therefrom is unaffected by his lack of interest in the suit in which the exhibits were impounded.

One who voluntarily and to subserve his own interest has produced papers, models, etc., owned by him, as part of his testimony in an equity suit, in which they are impounded as exhibits, is not subjected to an unreasonable seizure, or made to bear witness against himself, within the meaning of the Fourth and Fifth Amendments, by the delivery of such exhibits to the District Attorney and their use as

evidence in a prosecution of such owner for perjury alleged to have been committed in his testimony.

244 Fed. Rep. 304, affirmed.

APPEAL and error to review an order denying petition of Perlman to restrain and enjoin the United States attorney for the Southern District of New York from taking into his possession or custody certain exhibits which had been impounded and deposited by order of the district court for that district with the clerk of the court.

In support of the relief prayed Perlman alleges the following facts, which we state narratively: He is the inventor of a device known in the market as a demountable rim, its purpose being to mount and carry an inflated pneumatic tire upon a metallic rim, which contains locking devices for attachment to the wheels of automobiles and other vehicles.

He brought suit for infringement against the Standard Welding Company, and, issue being joined, there was a judgment for him against the company, which was affirmed by the Court of Appeals. 231 Fed. Rep. 453; *Id.* 734. At the trial of the cause certain exhibits hereinafter referred to were offered by him which were and are his personal property and have been continuously in his possession or in the possession of those who represent him.

Subsequently he, with others, formed a corporation known as the Perlman Rim Corporation, which, among other things, undertook to market the patented device.

In March, 1916, he assigned the letters patent to the corporation, but not the exhibits above mentioned.

In February, 1917, the corporation, being advised that the Firestone Tire & Rubber Company was infringing the device, brought suit against the company for infringement, which came up for trial before Judge Hand. After final submission of the case, the plaintiff, the Perlman Rim Corporation, through its counsel, asked leave to discontinue the action and for its dismissal without prejudice.

The motion was granted, but the condition was imposed that the evidence be perpetuated and the exhibits impounded in the custody of the clerk, to be kept under seal subject to the order of the court.[1] The exhibits were part of those heretofore referred to and used on the trial before Judge Hunt.

July 17, 1917, Perlman ascertained from the attorney for the corporation that the attorney had been served with a copy of an order signed by Judge Hand directing him, the attorney for the corporation, and the attorney for the Firestone Company to appear and show cause why the United States attorney should not have and be given possession of the exhibits, as the United States attorney had instituted proceedings against Perlman which involved the question whether he had committed an offense against the United States. The attorney for the corporation also told Perlman that he had not opposed the motion and that the attorney for the Firestone Company had not appeared; that, therefore, the order would be entered as a matter of course.

The application of the United States attorney was based

---

[1] "This cause having come on to be heard and testimony having been taken by both parties, now, on plantiff's motion, and after hearing defendant's counsel in opposition thereto, it is

"Ordered, that the bill of complaint herein be and it hereby is dismissed without prejudice with costs to defendant to be taxed; and as a condition of such dismissal and in accordance with plaintiff's stipulation made in open court, it is

"Further ordered, that the minutes of the trial be filed and that all the exhibits offered by either party be impounded and deposited with the clerk of this court under seal to be opened only by order of court on notice to each of the parties hereto; and

"That, all testimony taken up to the present time in this cause (as well as the exhibits) shall stand as testimony which may be read and used in any cause between the parties hereto or between any other parties who would be privies if judgment were entered herein, including cases in which the vendees and users of the rims made or sold by the defendant or such other parties are sued."

on an affidavit of one Harold Harper, an assistant to the United States attorney, which charged, among other things, that the exhibits were material and necessary in an investigation pending before the grand jury and for preparation for trial in case an indictment should be found.

The exhibits are his, Perlman's, personal property and the use of them by the grand jury and the United States attorney as contemplated would be in violation of his rights and unwarranted in law; they were impounded in a suit to which he was not a party, but a witness, and he had not consented thereto or been heard by counsel.

He prayed for an order upon all the parties concerned to show cause why an order should not be made directing the clerk to deliver to him, Perlman, the exhibits and that the United States attorney be restrained from using them, averring that, unless such stay were granted, his rights would be seriously invaded and he would be compelled to furnish evidence against himself in a criminal proceeding, all without due process of law.

A schedule of the exhibits is attached to the petition and shows them to be not only matters in writing, such as bills, letters and checks, but models of wheels, rim-carrying tires, and of other implements and tools, and the patent upon which the suit was brought.

Before the filing of the petition an order had been granted upon motion of the United States attorney directing the clerk to produce the exhibits before the grand jury. The order further directed that the United States attorney have access to the exhibits at all reasonable times and that if an indictment should be found against Perlman the United States attorney might have such temporary custody of the exhibits or any part thereof as might be necessary for the purpose, under such regulations as the clerk might make.

Upon the filing of Perlman's petition an order was granted restraining the use of the exhibits until the hear-

ing of the petition. Subsequently, upon the hearing, and Perlman having withdrawn so much of his application as related to the return of the exhibits to him, the court, Judge Manton sitting, denied the relief prayed for against the use of the exhibits by the United States attorney or their presentation to the United States grand jury.

The order recited that it was made upon the order of Judge Hand, the petition of Perlman and the affidavit of Harper.

The affidavit gives some details that Perlman's petition does not. It states that Perlman testified that he had been president of the Perlman Rim Corporation since its formation, and, further, that he gave testimony in respect to the alleged invention which was the subject of the patent, and that, in the course of his testimony, he produced and offered in evidence on the part of the corporation the exhibits. And the affidavit states that the impounding of the exhibits was part of the decree in the suit against the Firestone Company and that Perlman was present at the time and during practically all of the proceedings of the trial and that the minutes of the court show no protest by him.

It further states that certain of the alleged perjuries committed by Perlman referred directly to the exhibits, as to the time and manner of their production or alteration; and that certain other statements alleged to have been perjured were made by him and supported by the exhibits. And further that in the course of his cross-examination Perlman gave certain evidence with regard to events in England in the year 1895 which did not directly concern the matter of invention but went to the credibility of the witness as such, and in respect to those statements an indictment had been found against Perlman by the grand jury attending the court for the July, 1917, term.

The sources of information of Harper as to the above

matters not within his own knowledge were stated to be the official stenographic report of the trial, the records of the clerk's office, and statements made to him by persons who had been present in the court room during the trial and were cognizant of the proceedings.

*Mr. Louis Marshall*, with whom *Mr. A. A. Silberberg* was on the briefs, for appellant and plaintiff in error.

*Mr. Assistant Attorney General Fitts* for the United States.

MR. JUSTICE MCKENNA, after stating the case as above, delivered the opinion of the court.

The United States makes a motion to dismiss on the following grounds:

"1. Appellant has no interest in the subject matter of and is not a party to the equity suit out of which the appeal arises;

"2. The order of the District Court if considered as a part of the criminal proceeding is not final, but merely interlocutory, and therefore not reviewable by this court."

We think the motion should be overruled. Referring to the impounding order it will be seen that the Government was not one of those for whom the use of the exhibits was reserved. It, therefore, had no rights under the order. Its rights—or, it is more accurate to say, its powers—were of different origin, were governmental, and would affect Perlman by their exercise. We think, therefore, that he could intervene to oppose and urge in opposition property and constitutional rights and their sanctions. His petition was in effect independent and did not lose its character by being entitled in the equity suit.

The second contention of the Government is somewhat

strange, that is, that the order granted upon its solicitation was not final as to Perlman but interlocutory in a proceeding not yet brought and depending upon it to be brought. In other words, that Perlman was powerless to avert the mischief of the order but must accept its incidence and seek a remedy at some other time and in some other way. We are unable to concur.

On the merits the case is rather unique. Perlman contends that the proposed use by the United States before the grand jury of the exhibits as a basis for an indictment against him constitutes an unreasonable seizure and makes of him a compulsory witness against himself, in violation of the Fourth and Fifth Amendments. In other words, he claims the same sanctuary for the exhibits in the hands of the court as though they were in his hands and had never been published or delivered to the world. For this he invokes certain principles and cases. The principles are well established. They are paraphrases of the Constitution, giving it in cases a more precise specialization. They preclude, of course, compulsion, either upon the individual or, under some circumstances, his property; nor is it a condition or part of compulsion that there be an actual entry upon premises, an actual search and seizure. The principles preclude as well the extortion of testimony or detrimental inferences from silence or refusals to testify.

The incidences of the cases in which the principles were declared do not help Perlman. In all of them there was force or threats or trespass upon property, some invasion of privacy or governmental extortion. In *Boyd* v. *United States,* 116 U. S. 616, there was an order of the court requiring the production of private books, invoices and papers, the alternative of refusal being that their character as asserted by counsel should be taken as confessed. In *Counselman* v. *Hitchcock,* 142 U. S. 547, there was an effort to compel a witness to disclose circumstances which might be

evidence against him of the commission of an offense or might connect him with it. *Hale* v. *Henkel*, 201 U. S. 43, is of like illustration. In *United States* v. *Wong Quong Wong*, 94 Fed. Rep. 832, private letters were opened. In *United States* v. *Mills*, 185 Fed. Rep. 318, there was a general seizure of all of the defendant's business records by the United States marshal when executing a warrant of arrest. In *United States* v. *Abrams*, 230 Fed. Rep. 313, business papers were delivered to an officer under threats or promises of benefit. In *Weeks* v. *United States*, 232 U. S. 383, there was an invasion of premises without a search warrant and the carrying away of certain letters and envelopes. The latter case is especially relied on by counsel, and it is definite as to principles and as to seizures the Constitution forbids and those it permits. The distinctions are made clear and the discussion leaves nothing to be added of either principles or their illustration. But it is not like the case at bar. In it there was an invasion of the defendant's privacy, a taking from his immediate and personal possession. In the case at bar there was a voluntary exposition of the articles, for use as evidence in the District Court and in the Circuit Court of Appeals (231 Fed. Rep. 453 and 734), that judicial action should be based upon them, action prayed for by him against another. And they served his purpose; they prevailed as proof and secured a judgment for him.

There was again exposition of them and use as evidence in *Perlman Rim Co.* v. *Firestone Tire & Rubber Co.* In that case, it is true, Perlman was not nominally a party, but he was interested in the suit and its success. His patent depended upon it. They were part of his evidence, necessary supports and illustrations of it, as much, therefore, a part of his testimony as his spoken word, as much a part of the records of the court as the stenographer's notes. Their tangibility did not change their character as evidence. Indeed, it gave emphasis to the notes and

a more pertinent strength, and was deemed necessary to their completeness and understanding. As is usual in a patent case, there was exposition and illustration by exhibits. And their production was voluntary, no form of constraint or compulsion or extortion was put upon him, and that some one of them must exist is the test of immunity. *Holt* v. *United States*, 218 U. S. 245, 252. Therefore, as said by counsel for the Government, "Having let go the exhibits, so that they have become a part of the judicial records, he is not now in position to suppress the story they tell."

But Perlman insists that he owned the exhibits and appears to contend that his ownership exempted them from any use by the Government without his consent. The extent of the insistence is rather elusive of measurement. It seems to be that the owner of property must be considered as having a constructive possession of it wherever it be and in whosesoever hands it be, and it is always, therefore, in a kind of asylum of constitutional privilege. And to be of avail the contention must be pushed to this extreme. It is opposed, however, by all the cited cases. They, as we have said, make the criterion of immunity not the ownership of property but the "physical or moral compulsion" exerted.

As, we have seen, Perlman delivered the exhibits to publicity, made them the means of advantage. They, for the purposes of justice, were taken from his possession and volition into the control and custody of the court. Upon formal motion they were released for the use of the Government, a use as meritorious in consideration as that which determined the ruling in *Ex parte Uppercu*, 239 U. S. 435.

*Order affirmed.*