**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph C. CALANDRA, Moreno Keplinger, Paul L. Wright, and James B. Plank, Defendants-Appellants.**

**Nos. 83–1583 to 83–1586.**

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1983.

Decided May 3, 1983.

Robert M. Stephenson, Cotsirilos & Crowley, Ltd., Chicago, Ill., for defendants-appellants.

Howard M. Pearl, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL, BAUER and WOOD, Circuit Judges.

PER CURIAM.

This is an expedited consolidated appeal from the district court order denying defendants' motion to suppress. The motion to suppress was based on the assertion by defendants that an attorney-client privilege existed which would bar the testimony of two lawyers to be called by the government at trial, or any evidence obtained by the government through those lawyers. Initially we dismissed this appeal for want of jurisdiction, then vacated that order and heard oral arguments. Again we dismiss this appeal for want of jurisdiction.

In April of 1976, the Food and Drug Administration (FDA) began an investigation of Industrial Bio-Test Laboratories, Inc. (IBT), an independent contract laboratory which conducted animal studies on various drugs, pesticides, chemicals and other substances on behalf of the sponsors or manufacturers of the substances, to determine their safety and effectiveness. In November of 1977 the FDA first made accusations against the individual defendants.

Defendant Calandra, the original founder of IBT, was a Director and the President of the company. He resigned from those positions in March, 1977. Defendant Keplinger was the Manager of Toxicology at IBT. He left the company in September, 1977. Defendant Plank was Keplinger's assistant. He left the company in April, 1977. Defendant Wright formerly worked for IBT. He left the company in 1972 to begin working for Monsanto Corporation, a company which used IBT as a testing laboratory and which sponsored a substance that was the subject of an IBT study ultimately challenged by the FDA.

After the FDA initiated the investigation in 1976 and in order to assist IBT in answering the FDA's questions, the parent company of IBT, Nalco, Inc., provided lawyers to work with officials at IBT to answer the FDA's questions. Ted Mooney, the general counsel from Nalco, worked with IBT from approximately April 1976 to November 1976. In November of 1976, Mr. Mooney turned over his responsibility to Fred Current, an attorney on Mr. Mooney's staff at Nalco. Also in April of 1976, Nalco had retained Merrill Thompson of the law firm of Chadwell, Kayser, Ruggles, McGee and Hastings, Ltd. to assist IBT in answering the questions of the FDA.

In 1978, the FDA referred its investigation of IBT to the Department of Justice. A grand jury investigation ensued.

In October 1980, the government approached lawyers Thompson and Current for the purposes of obtaining information from them about their participation in the FDA investigation of IBT. The government agreed to immunize both Current and Thompson and IBT agreed to waive the company's attorney-client privilege as to any contacts the two attorneys had with IBT employees during the FDA investigation.

Both Thompson and Current received "letter" immunity. Rather than requesting that the district court enter an order under 18 U.S.C. § 6002, *et seq.,* the United States Attorney's office represented in a letter to Thompson and Current that each was being accorded use immunity from that office. By utilizing this procedure, the government by-passed the district court and the possibility that the issue of any attorney-client ramifications of Thompson's and Current's representation of IBT and its employees might be raised in those proceedings. Defendants were unaware of the granting by letter of use immunity to the two lawyers.

Pursuant to the immunity grants, Thompson and Current submitted to interviews with government agents. In those interviews they disclosed communications which they had with each defendant (with the exception of defendant Wright) concerning certain study reports, each defendant's participation in the preparation of those reports and each defendant's conduct during the FDA investigation. Subsequently, the substance of the Thompson and Current interviews was provided to the grand jury through agent testimony. Again, these events occurred without defendants' knowledge.

■ Under 28 U.S.C. § 1291, this Court has jurisdiction of appeals from all final decisions of the district courts. This finality requirement reflects a strong policy against piecemeal reviews. This policy is particularly important in the context of criminal actions where the delays and dis-

ruptions of interlocutory appeals are especially troublesome. *DiBella v. United States,* 369 U.S. 121, 126, 82 S.Ct. 654, 657–58, 7 L.Ed.2d 614 (1962). In this instance this appeal comes to us while the trial is in progress in the district court.

■ It is well settled that a defendant may not take an interlocutory appeal from an order denying a motion to suppress evidence. *E.g., DiBella v. United States* at 131, 82 S.Ct. at 660; *United States v. Dorfman,* 690 F.2d 1217, 1222 (7th Cir.1982). Defendants, however, would have us apply the judicially created exception to the finality rule first articulated in the unique circumstances found to exist in *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918).

In *Perlman* a subpoena had been directed to a third party requesting certain exhibits for use before a grand jury. The clerk of court was in possession of the exhibits as the exhibits had been impounded at the conclusion of prior civil litigation. The defendant, who claimed ownership of the exhibits, sought to raise a claim of privilege. The Supreme Court held an order compelling production was appealable because it was unlikely that the third party would risk a contempt citation in order to allow immediate review of defendant's claim of privilege. To have denied review would have left Perlman "powerless to avert the mischief of the order." *Id.* at 13, 38 S.Ct. at 419.

The *Perlman* exception has been applied by the courts to orders compelling testimony from lawyers whose clients as intervenors have asserted the attorney-client privilege. In *Velsicol Chemical Corporation v. Parsons,* 561 F.2d 671 (7th Cir.1977), this Court, in reviewing a district court order overruling on the basis of waiver a client's assertion of the attorney-client privilege in a grand jury setting, held that the order was appealable, stating that the client could not protect its rights in the absence of an appeal since it could not be expected that the attorney witness would risk contempt by failing to testify in order to protect the rights of the intervenor.

228

The rationale for the *Perlman* exception is that "intervention and appellate review provide those holding the privilege some means of preserving confidential matters." *In re November 1979 Grand Jury, Velsicol Chemical Corporation v. United States,* 616 F.2d 1021, 1025 (7th Cir.1980). It is the possibility of disclosure of information which is thought to be confidential that is central to the *Perlman* exception. The *Perlman* exception, therefore, permits the holder of the privilege to prevent disclosure of confidential matters.

■ It does not appear to us that an interlocutory appeal in the instant case would further the purposes of the *Perlman* exception to the finality rule. Defendants suggest that although there has already been disclosure before the grand jury, it is, by the very nature of the grand jury proceeding only a limited disclosure protected by the general rule of grand jury secrecy, Rule 6(e)(2), Fed.Rules of Criminal Procedure. While this position is somewhat persuasive, and we are aware that defendants were effectively denied an opportunity to contest the issue before disclosure to the grand jury because of the government's grant of letter immunity to the two attorneys, we note that the communications in question have also been disclosed to government agents. It was the agents who testified before the grand jury. A substantial breach of the claimed privilege therefore has already occurred. In the event that the present trial results in a conviction, this jurisdictional ruling on the interlocutory appeal does not foreclose raising the privilege issue again on direct appeal. It obviously would then be too late to retrieve the alleged privileged testimony from further exposure, but not too late to consider its impact, if any, upon the conviction.

We are reluctant to extend the *Perlman* exception to the particular circumstances presented by this case. Accordingly, this appeal is dismissed for lack of jurisdiction.