**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 11-2396**

—————————

ROSE URE MEZU,

     Plaintiff,

   v.

MORGAN STATE UNIVERSITY; ARMADA W. GRANT, in her personal capacity and as Director, Human Resources/Payroll for Morgan State University; DOLAN HUBBARD, in his personal capacity and as Chair, Department of English and Language Arts, Morgan State University,

     Defendants - Appellees,

   and

OLACHI MEZU, Doctor,

     Appellant.

—————————

Appeal from the United States District Court for the District of Maryland, at Baltimore.  William M. Nickerson, Senior District Judge.  (1:09-cv-02855-WMN)

—————————

Submitted:  August 28, 2012   Decided:  September 14, 2012

—————————

Before NIEMEYER, MOTZ, and AGEE, Circuit Judges.

—————————

Affirmed by unpublished per curiam opinion.

—————————

C. Valerie Ibe, LAW OFFICE OF C. VALERIE IBE, West Hills, California, for Appellant.  Douglas F. Gansler, Attorney General

of Maryland, William F. Brockman, Acting Solicitor General, Sally L. Swann, Assistant Attorney General, Baltimore, Maryland, for Appellees.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dr. Olachi Mezu ("Dr. Mezu"), a non-party to the underlying litigation, appeals the district court's order overruling her objections to the magistrate judge's discovery order. Rose Ure Mezu, Ph.D. ("Plaintiff") brought the ongoing employment discrimination suit against her employer, Morgan State University, and two of its administrators ("Defendants"), alleging interference with her right to take leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, to care for her adult daughter, Dr. Mezu, following emergency brain surgery.

On August 13, 2009, the day that Dr. Mezu was discharged from the hospital, Plaintiff applied for FMLA leave to care for Dr. Mezu for the period of August 31, 2009 to October 2, 2009, attaching a medical certificate completed by Dr. Mezu's neurosurgeon, as required by the FMLA. Thereafter, Plaintiff applied to extend the period of FMLA leave until December 4, 2009. On September 18, 2009, Defendants notified Plaintiff that the medical certificate she had submitted was inadequate to support her leave request, and the physician who had completed the certificate was not responding to requests for additional information. On November 13, 2009, Defendants notified Plaintiff that her request for paid sick leave was denied and she would be placed on unpaid leave, effective

3

immediately, until she provided the necessary medical documentation.

Thereafter, Plaintiff initiated the underlying lawsuit, asserting employment discrimination claims related to the denial of her FMLA leave request. To present its defense that Plaintiff was not entitled to leave under the FMLA, Defendants subpoenaed the Johns Hopkins Custodian of Records for additional medical records related to Dr. Mezu's care. Dr. Mezu filed a motion to quash the subpoena, asserting her privacy interests in the medical records. Following a hearing, the magistrate judge denied the motion to quash without prejudice, finding that, although "[t]he medical records sought by Defendant[s] are within the broad scope of discovery as defined by Fed. R. Civ. P. 26(b)," Defendants failed to make the requisite showing of necessity for the records. However, the magistrate judge provided Defendants an opportunity to demonstrate need for the subpoenaed records by "provid[ing] an affidavit from a qualified medical professional demonstrating that the records provided to date are insufficient to determine the need for FMLA leave."

Defendants subsequently submitted an affidavit from neurosurgeon Dr. James Conway, who reviewed the medical records previously produced by Plaintiff, stating that the records were "entirely inadequate" to establish whether Dr. Mezu was

4

incapable of self-care during the period that Plaintiff took leave. Plaintiff and Dr. Mezu both moved to strike Dr. Conway's affidavit. The magistrate judge denied the motions to strike, finding that "[n]either Plaintiff nor Dr. Mezu presents a non-frivolous reason for striking Dr. Conway's affidavit." Additionally, the magistrate judge denied Dr. Mezu's motion to quash the subpoena, reasoning that "Dr. Mezu's additional medical records remain significant to issues in this case, her privacy rights in these documents will be protected through implementation of a Confidentiality Order governing the records, and production of the documents cannot be said to be 'excessively burdensome or expensive.'" Thereafter, both Plaintiff and Dr. Mezu filed objections to the magistrate judge's discovery ruling.

Dr. Mezu appealed the district court's subsequent order overruling her objections, arguing that: (1) her medical records are confidential and protected from disclosure under federal law; (2) her medical records have no legal relevance to the underlying case; and (3) any hypothetical relevance does not outweigh the harm caused. In response, Defendants question whether this court has jurisdiction to review the discovery order at issue, emphasizing that appellate courts seldom exercise jurisdiction to review discovery orders in an interlocutory posture. Defendants further assert that the

5

district court did not abuse its discretion by refusing to quash the subpoena for Dr. Mezu's medical records, contending that the records are properly within the scope of discovery and the district court gave appropriate consideration to the confidential nature of the records and the terms under which they would be exposed.

We first address the issue of jurisdiction. This court may exercise jurisdiction only over final decisions, 28 U.S.C. § 1291 (2006), and certain interlocutory and collateral orders. 28 U.S.C. § 1292 (2006); Fed R. Civ. P. 54(b); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949). A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Caitlin v. United States, 324 U.S. 229, 233 (1945). "Discovery orders generally do not meet this requirement" because "they are necessarily only a stage in the litigation and almost invariably involve no determination of the substantive rights involved in the action." MDK, Inc. v. Mike's Train House, Inc., 27 F.3d 116, 119 (4th Cir. 1994) (internal quotation marks and citations omitted); see also Church of Scientology v. United States, 506 U.S. 9, 18 n.11 (1992) ("As a general rule, a district court's order enforcing a discovery request is not a 'final order' subject to appellate review.").

6

However, this court has recognized the so-called *Perlman* doctrine announced by the Supreme Court in *Perlman v. United States*, 247 U.S. 7, 13 (1918), as conferring appellate jurisdiction for certain discovery orders. The *Perlman* doctrine provides that "a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology*, 506 U.S. at 18 n.11; *see also* *United States v. Meyers*, 593 F.3d 338, 345 (4th Cir. 2010) (discussing *Perlman* doctrine). In this case, Defendants subpoenaed the Johns Hopkins Custodian of Records, a disinterested third party that has already produced several of Dr. Mezu's medical records and would presumably not risk a citation for contempt in order to secure for Dr. Mezu an opportunity for judicial review. Accordingly, appellate jurisdiction to review the discovery order exists under the *Perlman* doctrine.

We now address Dr. Mezu's arguments with respect to the merits of the discovery order. "This [c]ourt affords a district court substantial discretion in managing discovery," *LoneStar Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995), and therefore "review[s] a district court's discovery orders for abuse of

7

discretion." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). An abuse of discretion occurs when the district court's decision is "guided by erroneous legal principles" or "rests upon a clearly erroneous factual finding." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). Reversal is required if this court "has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Id.

On appeal, Dr. Mezu emphasizes that her medical records are private and confidential, maintaining that disclosure should have been denied because her privacy concerns outweigh Defendants' interests in the information. Dr. Mezu correctly notes that the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d-1320d-9, provides protections against disclosure of medical records. However, HIPAA also permits release of such records "in response to a subpoena, discovery request, or other lawful process." 45 C.F.R. § 164.512(e)(1)(ii). The magistrate judge appreciated the confidential and private nature of Dr. Mezu's records, requiring Defendants to submit an expert affidavit to show need for the medical records before ruling on Dr. Mezu's motion to quash. Moreover, the magistrate judge issued a "Confidentiality Order" designating Dr. Mezu's subpoenaed medical records as

8

confidential, requiring the records to be filed under seal, limiting the individuals able to review the records to counsel, experts employed by the parties, and one designated client representative, and prohibiting photocopying or dissemination of the records. Accordingly, Dr. Mezu's privacy arguments with respect to the magistrate judge's discovery order are not compelling.

Dr. Mezu also asserts that her medical records "simply have no relevance to any of the claims in [Plaintiff's] lawsuit" and are "totally irrelevant to any dispute between Plaintiff and [her employer]." Dr. Mezu insists that "[o]ther medical records not shared with the employee, which the employee would not have had the training to evaluate, have no possible relevance" to Plaintiff's FMLA interference claim because "[a]s long as the doctors told the employee that [Dr. Mezu] needed care, it would be irrelevant even if the records showed that these physicians were wrong or even, for some reasons, lying." Dr. Mezu further contends that the FMLA "does not allow retroactive attacks on physicians' judgments" when an employer fails to seek a second opinion at the time of the leave request.

Contrary to Dr. Mezu's assertions, the magistrate judge and the district court properly found that her medical records are relevant to the underlying lawsuit. Plaintiff alleged that her employer interfered with her right to leave

9

under the FMLA. To prevail on this claim, Plaintiff "bears the burden of proof in establishing that [she] is entitled to the benefit at issue under the statute." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 549 (4th Cir. 2006). To do so, Plaintiff must prove that her daughter was "18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C.A. § 2611(12); see also Rhoads v. Fed. Deposit Ins. Corp., 357 F.3d 373, 384 (4th Cir. 2001) (to state FMLA interference claim, plaintiff must establish that employee or applicable relative "was afflicted with an FMLA-qualifying condition, because otherwise she did not have any right under the Act with which her employer could have interfered."). Federal Rule of Civil Procedure 26(b)(1) permits discovery of "nonprivileged matter that is relevant to any party's claim or defense." In defense, Defendants have asserted that Dr. Mezu was not "incapable of self-care" and, therefore, Plaintiff was not entitled to FMLA leave. Accordingly, Dr. Mezu's medical records are, in fact, relevant to the underlying lawsuit.

Moreover, Dr. Mezu's claim that Defendants waived the right to challenge whether she was incapable of self-care by failing to seek a second opinion at the time Plaintiff requested leave has been foreclosed by Fourth Circuit precedent. We previously addressed whether an employer waives the right to contest an employee's "qualifying health condition" under the

10

FMLA by failing to seek a second opinion under the statute in Rhoads v. Fed. Deposit Ins. Corp., 357 F.3d 373, 385 (4th Cir. 2001), holding that the FMLA "does not require an employer to obtain a second opinion or else waive any future opportunity to contest the validity of the certification." In reaching this conclusion, we emphasized, "The FMLA provides only that an employer 'may' seek a second, or third, opinion if it questions the validity of an employee's proffered medical certification of her condition." Id. at 386. Therefore, "the plain language of the Act does not suggest that an employer must pursue these [second opinion] procedures *or* be forever foreclosed from challenging whether an employee suffered from a serious health condition; and nothing in the legislative history of the FMLA explicitly supports that interpretation." Id.

Accordingly, we conclude that the district court did not abuse its discretion in overruling Dr. Mezu's objections to the magistrate judge's discovery order, as the subpoenaed medical records are relevant to the underlying litigation and a strict confidentiality order has been put in place to protect Dr. Mezu's privacy interests. We therefore affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

11

AFFIRMED