In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2661

IN RE:

ESTABLISHMENT INSPECTION OF:
ANTHONY MARANO COMPANY, 3000
S. ASHLAND AVENUE, #100,
CHICAGO, IL 60608

APPEAL OF: ANTHONY MARANO COMPANY

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-mc-00499 — **Virginia M. Kendall**, *Judge.*

———————————

ARGUED FEBRUARY 16, 2022 — DECIDED OCTOBER 18, 2022

———————————

Before RIPPLE, SCUDDER, and KIRSCH, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Anthony Marano Company
("AMC" or "the company") brought this appeal following its
unsuccessful motion to quash an administrative warrant is-
sued by the district court at the request of the Occupational
Safety and Health Administration ("OSHA"). Because the dis-
trict court's order denying the motion to quash is not a final

order for purposes of 28 U.S.C. § 1291, we dismiss the appeal for want of jurisdiction.

**I**

On July 9, 2021, an inspector for OSHA, Eloise Minett-Jackson, attempted to conduct an inspection of AMC, a fruit and vegetable wholesaler in Chicago, Illinois. AMC's management considered the timing of this inspection to be suspicious because the company was scheduled to go to trial on another OSHA matter four days later. AMC's management denied Minett-Jackson entry into its establishment.

On July 28, 2021, OSHA applied for an ex parte inspection warrant for AMC's facility. The warrant application, filed by Minett-Jackson, stated that it was "based upon a complaint from one of AMC's current employees."[1] Specifically, on July 7, 2021, OSHA had received a telephonic complaint from an AMC employee, who had witnessed a forklift accident at the facility on March 26, 2021. The reporting employee recounted that the injured employee was cleaning up debris in the loading dock area when a forklift, moving in reverse, struck him in the back. Once impacted by the forklift, the employee fell forward and hit his head. Local emergency personnel transported him to a hospital where he received treatment for back, head, and neck injuries.

In the application for a warrant, Minett-Jackson further stated that, based on her training and experience, she knew that the described situation might constitute violations of the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 651 et seq., and the regulations issued pursuant to the Act.

---

[1] R.25 at 2.

She specifically noted 29 C.F.R. § 1910.178, the regulation on safety requirements relating to operation and maintenance of powered industrial vehicles, which includes forklifts.

The warrant application also stated that OSHA had determined that the complaint identified hazards covered by OSHA's Local Emphasis Program for Powered Industrial Vehicles ("Emphasis Program"); the program also encompassed forklifts. A copy of the Emphasis Program was included with the warrant application, and Minett-Jackson referenced the applicable provision of the Emphasis Program.[2] Regarding the scope of the proposed warrant, the application sought access

> to those areas and/or conditions specified in this Application, as well as to any hazardous work areas, procedures and/or working conditions where work is performed or permitted to be performed by employees of the employer within the plain view of the Compliance Officer(s) during the course of the inspection. In those areas, the inspection and investigation would include all pertinent conditions, structures, machines, apparatuses, devices, equipment, and materials, as they relate to the hazardous conditions referred to in this

---

[2] Specifically, the Emphasis Program provided that OSHA would schedule for inspection "[a]ny referral or complaint classified by OSHA as 'serious' which alleges a hazard or a condition that may be a violation of the powered industrial truck standard or a potentially fatal 'struck/caught/fall hazard' associated with the operation of a powered industrial vehicle … ." *Id.* at 35.

> Application and/or in the plain view of the
> Compliance Officer(s) during the course of the
> inspection.[3]

The magistrate judge issued the warrant.

When Minett-Jackson returned to AMC on August 2, 2021, with the warrant, the company again denied her entry.[4] Two days later, it filed an emergency motion to stay the warrant and unseal the application. It asked the magistrate judge to stay execution of the warrant until OSHA provided the company with all documentation supporting its request for the warrant. It also requested time to file a motion to quash the warrant on the ground that it was not supported by probable cause.

In his response, the Secretary of Labor ("Secretary") maintained that the warrant was supported by probable cause. He further asserted that there is no right to pre-enforcement review of a warrant and urged the court to deny the company's motion on that ground. He also submitted that the warrant was based on an employee complaint that "met the criteria for an on-site inspection because the complaint allege[d] hazards covered by an Emphasis Program."[5] The Secretary further urged the magistrate judge to deny AMC's request to unseal

---

[3] *Id.* at 5.

[4] An employee of AMC recorded this attempt, and a transcript of statements made by Minett-Jackson is set forth in AMC's brief. *See* Appellant's Br. 4–5.

[5] R.12 at 2.

the warrant application. Finally, he filed a cross-motion for contempt.

On August 6, the magistrate judge held a telephonic hearing. Following the hearing, he entered a minute entry "provisionally grant[ing]" the request to unseal the application for the warrant, but postponing that action to give the Secretary an opportunity to submit "a set of warrant materials with proposed redactions."[6] He took the rest of the motions under advisement.

Following the hearing, AMC also filed a motion to quash. The company maintained that the warrant lacked probable cause because OSHA had not "undertaken the required investigation into the employee complaint" so as to set forth "specific evidence of an existing violation."[7] AMC also urged that the warrant be quashed because it was overbroad. According to the company, it "far exceed[ed] the scope of the alleged employee complaint" because the warrant covered "all areas and conditions relating to the operation and maintenance of forklifts."[8] Finally, AMC submitted, the Emphasis Program could not support the finding of probable cause. In its view, in order to support probable cause, an Emphasis Program warrant must "be derived from neutral sources"; however, the OSHA Emphasis Program on which the warrant was based was

---

[6] R.17.

[7] R.18 at 9.

[8] *Id.* at 9, 11 (emphasis removed).

triggered by an employee complaint and therefore was not "neutral."[9]

On August 20, the magistrate judge permitted a redacted version of the application to be made public but otherwise kept the application under seal. The judge also denied the emergency motion to stay. That decision was explained in an opinion and order entered on the same day. Observing that the issue was crucial to AMC's request to stay the execution of the warrant, the magistrate judge first rejected AMC's argument "that federal law, including the law of the Seventh Circuit, 'is clear that there is a pre-enforcement right to judicial review of an administrative warrant.'"[10] In resolving this question, the magistrate judge first turned to the Supreme Court's decision in *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978), which had "extended the Fourth Amendment warrant requirement to administrative inspections, but in a limited fashion."[11] He observed that:

> In requiring OSHA to obtain an administrative inspection warrant from a neutral magistrate judge, the Supreme Court stated explicitly that "[p]robable cause in the criminal law sense is not required." Instead, probable cause justifying an administrative inspection warrant "may be based not only on specific evidence of an

---

[9] *Id.* at 12 (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 321 (1978)) (emphasis removed).

[10] R.21 at 7 (quoting R.14-1 at 1).

[11] *Id.* at 9.

existing violation but also on a showing that 'reasonable legislative or administrative stand-ards for conducting an … inspection are satis-fied with respect to a particular [establish-ment].'"[12]

The magistrate judge further noted that *Barlow's* had not ad-dressed the process by which an employer could challenge a warrant. AMC, therefore, was asking the court to "extend *Bar-low's* to hold that the Fourth Amendment not only requires a warrant for administrative searches … but … also requires the Secretary to refrain from executing issued warrants if the em-ployer asks a federal court for a second level of judicial review of those warrants."[13]

The magistrate judge concluded, however, that such an extension would not be consistent with the case law that had developed since *Barlow's*, especially our decision in *In re Es-tablishment Inspection of Kohler Co.*, 935 F.2d 810 (7th Cir. 1991). According to the magistrate judge, *Kohler* held that federal courts only had jurisdiction to entertain motions to quash that first had been presented to the agency for final adjudication. Thus, rather than requiring "federal courts [to] entertain chal-lenges to the constitutional validity of administrative inspec-tion warrants before the Secretary ha[d] a chance to execute them," *Kohler* actually "support[ed] the opposite position."[14]

---

[12] *Id.* (quoting *Barlow's*, 436 U.S. at 320, 320–21) (alteration in original) (ci-tation omitted).

[13] *Id.* at 11.

[14] *Id.* at 15.

The magistrate judge acknowledged that there was language in *Kohler* suggesting that the exhaustion requirement "was dependent on employers having an avenue for Article III review … if the employer had no way to suppress the evidence obtained through the warrant in the administrative proceedings."[15] Nevertheless, he believed that the language in *Kohler* was a response to OSHA's argument in that case "that the exclusionary rule did not apply in Review Commission proceedings."[16] In the present case, however, the Secretary had argued explicitly that the exclusionary rule applied in administrative proceedings.

The magistrate judge then reviewed other cases cited by AMC, but determined that those authorities did not change his decision "that Anthony Marano ha[d] no pre-execution right to judicial review of the administrative inspection warrant."[17]

Having concluded that there is no pre-execution right to judicial review, the magistrate judge considered the factors for granting a stay:

> (1) whether Anthony Marano ha[d] made a strong showing that it [wa]s likely to succeed on the merits of the motion to quash; (2) whether Anthony Marano w[ould] be harmed irreparably absent a stay; (3) whether issuance of the

---

[15] *Id.* at 16 (referencing *In re Establishment Inspection of Kohler Co.*, 935 F.2d 810, 814–15 (7th Cir. 1991)).

[16] *Id.*

[17] *Id.* at 23.

> stay w[ould] substantially injure other parties interested in the proceeding; and (4) whether the stay [wa]s in the public interest.[18]

The magistrate judge determined that, even if AMC had exhausted its administrative remedies and therefore the motion to quash was properly before it, the motion would fail on the merits because "the paragraph in the employee complaint recited in the Warrant Application more than meets *Barlow's* standards and was enough to establish the requisite degree of administrative probable cause."[19]

Finally, in denying the stay, the magistrate judge ruled that the facts of the warrant application were not stale, that OSHA was not using the warrant as a tool of harassment, and that the warrant was not overbroad. With respect to overbreadth, the magistrate judge noted that the warrant provided "that the inspection and investigation would 'extend only to the alleged hazardous working conditions and/or work areas described above'" as well as those in the inspector's plain view.[20] He explained that the March 26 injury had occurred at a loading dock, "[t]he object of the search … was loading dock areas where forklift trucks are operated in close proximity to other workers," and therefore "[t]he warrant reasonably allowed OSHA to inspect loading dock areas and conditions in facility locations where forklifts [we]re operated

---

[18] *See id.* (referencing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

[19] *Id.* at 30.

[20] *Id.* at 33 (quoting R.1 at 58).

near other workers…."[21] The magistrate judge acknowledged that the warrant was "not a model of clarity"; however, OSHA "could not have offered greater specificity when [it] did not know the precise location of the loading area where the March 26 injury happened or other loading areas where forklifts [we]re operated in proximity to workers."[22] Therefore, he concluded that "[t]he warrant's scope was reasonable under the circumstances, not overbroad, and not wall-to-wall."[23] The magistrate judge therefore denied the stay.

Shortly after the magistrate judge issued his order, AMC asked the judge to clarify whether the opinion and order had been issued under his own authority or whether it was a Report and Recommendation. The magistrate judge clarified that it was an order issued under 28 U.S.C. § 636(a)(1), and

---

[21] *Id.* at 33–34.

[22] *Id.* at 34.

[23] *Id.* The magistrate judge noted that he considered

> only the four corners of the Warrant Application, and not the later-submitted video evidence Anthony Marano obtained when one of its managers started video recording the OSHA agent and a deputy U.S. marshal when they arrived to execute the warrant on August 2. Regardless, the OSHA agent's professed lack of knowledge, on the video, about where she was to search is of no moment, because she explained in the same breath that she did not yet know the precise location of the loading dock area where the forklift injury occurred.

*Id.* at 33 (citations omitted).

AMC filed an emergency motion to quash before the district court.

The district court held a telephonic hearing on the motion to quash on August 24.[24] In a minute order following the conference, it stated:

> Magistrate Judge Fuentes issued a Memorandum Opinion and Order on August 20, 2021, in relevant part denying AMC's motion for the same relief. The Court views the Memorandum as a Report and Recommendation and finds that it is thorough, well-reasoned and correct. The Court therefore adopts Magistrate Judge Fuentes's finding that there is no pre-enforcement right to judicial review of administrative inspection warrants in the Seventh Circuit. Further, [t]he Court agrees and accepts that there is probable cause for the warrant at issue in light of a telephonic complaint lodged against AMC on July 7, 2021. AMC offers no evidence or case law tending to show that the complaint—which pertained to an AMC employee suffering bodily injuries from a forklift accident—was insufficient to show probable cause. AMC's Emergency Motion is accordingly denied. Upon oral motion, the Court stays this order until the Plaintiff has the opportunity to appeal this Court's decision.[25]

---

[24] A transcript of that teleconference is located at R.34.

[25] R.29 (citations omitted).

AMC filed a notice of appeal on September 2, 2021. On the same day, the Secretary filed a motion to lift the stay and to allow both the inspection and the contempt proceedings to go forward. The Secretary explained that "[t]he contempt proceeding [wa]s of principle importance" because, "in the motion for contempt, the Secretary sought tolling of the statute of limitations as an equitable remedy for AMC's continued defiance of a duly issued inspection warrant, and without such a remedy, the Secretary's inspection and potential enforcement efforts in this matter w[ould] be severely prejudiced."[26] He further explained that staying "the execution of the warrant pending appeal, without equitable tolling," effectively would prevent him from carrying out his enforcement responsibilities.[27] He further noted that "[t]he statute of limitations for any OSHA violations related to the March 26, 2021 forklift accident expire[d] on September 26, 2021," and "AMC should not be allowed to frustrate OSHA's responsibilities and avoid an OSHA inspection by waiting out the clock on the appeal period" until the limitations period expired.[28] The Secretary therefore asked the court to lift the stay, to allow the contempt proceedings to go forward, and to toll the relevant statute of limitations.

On September 7, the magistrate judge entered a minute order clarifying that the district court had not stayed the pending contempt hearings. However, the issues presented by AMC's appeal were related to the contempt proceedings, and

_____

[26] R.33 at 2 (citation omitted).

[27] *Id.*

[28] *Id.*

"the filing of a notice of appeal deprives the district court of jurisdiction over the issues presented on the appeal. … The notice of appeal, therefore, raise[d] a significant question over this Court's jurisdiction to proceed with the contempt certification motion."[29] The magistrate judge "continue[d] the cross-motion for contempt certification" and stated that he would take "no action on the motion to proceed with the contempt certification motion, which [wa]s at least partially a matter before the district court."[30] He vacated the briefing schedule on the contempt certification motion and indicated that he would take no further action until we had addressed the issue of our own jurisdiction.[31]

On September 13, AMC responded to the Secretary's motion. It maintained that the motion "must be rejected … because lifting the stay would moot the pending Seventh Circuit appeal" and "subject Anthony Marano Company to a violation of its Fourth Amendment rights without an adequate remedy."[32] Moreover, it maintained, the district court did not have jurisdiction to enter an order tolling the statute of limitations during the pendency of the appeal, and, even if it did, tolling was not warranted.

The stayed contempt proceedings, and the Secretary's motion to toll the statute of limitations, are still pending in the district court.

---

[29] R.35.

[30] *Id.* (citations omitted).

[31] *Id.*

[32] R.40 at 1.

## II

With this background, we now turn to the appeal before us. AMC submits that it has a right to appeal the constitutional sufficiency of the administrative warrant prior to its execution. Before we can consider that question, however, we first must decide whether we have appellate jurisdiction.

### A.

#### 1.

Section 1291 of Title 28 of the United States Code generally restricts courts of appeals to review of "final decisions" of the district courts. "A final decision is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *United States v. Sealed Defendant Juvenile Male*, 855 F.3d 769, 771 (7th Cir. 2017) (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015)). Here, the Secretary maintains that the district court has not rendered a final judgment. Specifically, he submits that the district court's August 24 order, which is the basis for AMC's appeal, is not final for purposes of 28 U.S.C. § 1291 because it did not resolve all the parties' claims. He invites our attention to the continued pendency of his motion for contempt and his motion to toll the statute of limitations before the district court.[33]

---

[33] The Secretary also submits that the August 24 order does not fit neatly into any category of collateral order that is subject to immediate review. AMC agrees. We have examined independently the possibility of predicating our jurisdiction on the collateral order doctrine and agree with the parties. The collateral order doctrine "carves out a 'small class' of non-final orders that are deemed final and immediately appealable." *Doe v.*
(continued … )

AMC does not maintain that the August 24 order ended the litigation in the district court. Nevertheless, it asserts that the August 24 order is final under 28 U.S.C. § 1291 because of the "exception" annunciated by the Supreme Court in *United States v. Ryan*, 402 U.S. 530 (1971).[34] *Ryan*, AMC submits, acknowledges a right to immediate appeal "in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims."[35] According to AMC, unless we apply the rule in *Ryan* and permit immediate appellate review, OSHA could forcibly execute its warrant, leaving AMC without a means to redress its claim that the warrant issued by the magistrate judge and approved by the district court violates the Fourth Amendment.

**2.**

Because *Ryan* is central to AMC's argument, we begin by examining that decision. In *Ryan*, the petitioner received a subpoena duces tecum in grand jury proceedings. The subpoena commanded him to produce the books and records of

---

*Vill. of Deerfield*, 819 F.3d 372, 375 (7th Cir. 2016) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949)). "To fall within the collateral order doctrine, the non-final order must: (1) be conclusive on the issue presented; (2) resolve an important question separate from the merits of the underlying action; and (3) be 'effectively unreviewable' on an appeal from the final judgment of the underlying action." *Id.* (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)). Here, however, the present appeal seeks a determination on the merits: whether AMC must comply with the administrative inspection warrant.

[34] App. R.9 at 10.

[35] *Id.* (quoting *United States v. Ryan*, 402 U.S. 530, 533 (1971)).

five Kenyan companies. Ryan moved to quash the subpoena
on the ground that Kenyan law forbade the removal of the
corporate documents from Kenya without the consent of cer-
tain governmental officials. The district court denied the mo-
tion but modified the subpoena so that Ryan was required "to
attempt to secure such consent and, if unsuccessful, to make
the records available for inspection in Kenya." *Ryan*, 402 U.S.
at 531. Ryan appealed, and the court of appeals determined
that it had jurisdiction to consider the denial of the motion to
quash. According to the appellate court, "by directing [Ryan]
to make application to a Kenyan official for release of some of
the records, the District Court had done 'more than deny a
motion to quash; it in effect granted a mandatory injunction'";
consequently, it determined that the order was immediately
appealable. *Id.* (quoting *In re Ryan*, 430 F.2d 658, 659 (9th Cir.
1970)).

The Supreme Court, however, took another view: the dis-
trict court's order was not immediately appealable. The Court
first observed that its decision in *Cobbledick v. United States*,
309 U.S. 323 (1940), had held

> that one to whom a subpoena is directed may
> not appeal the denial of a motion to quash that
> subpoena but must either obey its commands or
> refuse to do so and contest the validity of the
> subpoena if he is subsequently cited for con-
> tempt on account of his failure to obey.

*Ryan*, 402 U.S. at 532. Ryan did not question the validity of
*Cobbledick* but claimed that its rule should not apply to him
because, unless he could seek immediate review of the district
court's order, "he w[ould] be forced to undertake a substan-
tial burden in complying with the subpoena, and w[ould]

therefore be 'powerless to avert the mischief of the order.'" *Id.* (quoting *Perlman v. United States*, 247 U.S. 7, 13 (1918)). The Court disagreed. It acknowledged that, if Ryan complied with the subpoena, he would "not … be able to undo the substantial effort he has exerted in order to comply." *Id.* However, the Court continued, compliance was not his only option. If "the subpoena [wa]s unduly burdensome or otherwise unlawful, he [could] refuse to comply and litigate those questions in the event that contempt or similar proceedings [we]re brought against him. Should his contentions be rejected at that time by the trial court, they w[ould] then be ripe for appellate review." *Id.* at 532. The Court noted that it had

> consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal.

*Id.* at 533.

The Court acknowledged that there was a "limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims." *Id.* It recognized specifically that immediate review was available from the

> denial of a motion for the return of seized property, where there is no criminal prosecution pending against the movant. Denial of review in

such circumstances would mean that the Government might indefinitely retain the property
without any opportunity for the movant to assert on appeal his right to possession.

*Id.* (citation omitted). The Court also noted that in *Perlman*,
247 U.S. 7, it had allowed

review of an order directing a third party to produce exhibits which were the property of [Perlman] and, he claimed, immune from production. To have denied review would have left
[the owner] "powerless to avert the mischief of
the order," for the custodian could hardly have
been expected to risk a citation for contempt in
order to secure [the owner] an opportunity for
judicial review.

*Id.* (quoting *Perlman*, 247 U.S. at 13). Those situations, however, were different from the case before it because Ryan was
"free to refuse compliance and … in such event he may [have]
obtain[ed] full review of his claims before undertaking any
burden of compliance with the subpoena." *Id.*

*Ryan* does not support AMC's claimed right to immediate
review. It simply restates the general proposition that a denial
of a motion to quash a grand jury subpoena is not immediately appealable and acknowledges the limited exception to
that rule when property otherwise might be held indefinitely
or surrendered to the Government without a determination
of a party's rights.

Notably, *Ryan*'s exception only applies to that "limited
class of cases where denial of immediate review would render
impossible *any review whatsoever* of an individual's claims." *Id.*

(emphasis added). AMC, by contrast, is not without a means to redress the alleged Fourth Amendment violation. First, assuming the Secretary postpones execution of the warrant until the contempt proceedings are concluded, those proceedings would provide AMC an opportunity to raise its Fourth Amendment arguments. Second, at oral argument, both the Secretary and AMC acknowledged that, even if the warrant were executed, AMC could raise any Fourth Amendment violations in the context of administrative proceedings.[36]

One of our sister circuits has considered and rejected the argument that *Ryan* provides a basis for appellate review of an administrative warrant. In *In re Consolidated Rail Corp.*, 631 F.2d 1122 (3d Cir. 1980), OSHA had obtained a warrant authorizing a general inspection of a Conrail locomotive repair plant, but Conrail refused to allow the inspection and moved to quash the warrant. OSHA then sought to hold Conrail in contempt. As the district court did here, the district court in *Consolidated Rail* denied Conrail's motion to quash but continued the contempt proceedings and issued a stay of the warrant pending Conrail's appeal. On appeal, the Third Circuit traced the finality doctrine through *Cobbledick* and *Ryan* and

[36] If the inspection did not lead to administrative proceedings, a *Bivens* action might provide a possible avenue of redress. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing an action for damages against federal officers who conducted a search in violation of the Fourth Amendment). We are aware that in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), the Supreme Court expressed a reluctance to recognize any new *Bivens* actions. *See also Hernandez v. Mesa*, 140 S. Ct. 735 (2020). The contours of any reconsideration of *Bivens* are, of course, a matter for the Supreme Court to determine, not for this court. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

then rejected Conrail's "contention that the holdings of th[o]se … cases apply only to motions to quash grand jury subpoenas and not to denials of motions to quash warrants sought by administrative agencies." *Id.* at 1123. The Third Circuit explained that Conrail's action to quash the administrative warrant was part of the same proceeding in which the Secretary had asked for civil contempt sanctions. Therefore, it continued, "if the court enters the judgment of contempt sought by the Secretary, there will be no further action for [the district court] to take," and "[t]he judgment of contempt and the sentence, if any, will be the final judgment in the case." *Id.* at 1125. In sum, the fact that the contempt proceedings were ongoing prevented appellate review.

AMC acknowledges the Third Circuit's holding in *Consolidated Rail*.[37] It notes, however, that the Third Circuit "did not consider OSHA's right to forcibly execute a warrant, which would force the employer to suffer a constitutional injury for which there is no adequate remedy."[38] Underlying AMC's argument is the assumption that OSHA has a right to forcibly execute an administrative warrant without resort to contempt proceedings,[39] and that, absent an opportunity to challenge an illegal search through contempt proceedings, it has no other

---

[37] *See* Reply Br. 5 n.1.

[38] *Id.*

[39] The basis for AMC's belief that an administrative, as opposed to a criminal, warrant is subject to forcible execution is *Trinity Marine Products, Inc. v. Chao*, 512 F.3d 198, 202 (5th Cir. 2007). In other submissions, however, AMC argues fervently that *Trinity Marine*'s reasoning is faulty and should be rejected by this court. *See* Reply Br. 8–10.

mechanism to redress a possible Fourth Amendment violation.

We disagree that OSHA's right to forcible entry—an issue which we do not reach—is dispositive.[40] As we already have noted, even if the warrant is executed, that action does not "render impossible any review whatsoever" of its Fourth Amendment claims. *Ryan*, 402 U.S. at 533.

Thus, *Ryan* provides no basis for appellate jurisdiction.

**B**.

Alternatively, AMC proposes that cases involving the enforcement of administrative subpoenas should guide our decision here. As a general matter, the decision to grant or deny a motion to enforce a subpoena, whether in a criminal proceeding or before a grand jury, is not immediately appealable because "permitting separate reviews of the component elements in a unified cause" would bring the administration of justice to a halt. *Cobbledick*, 309 U.S. at 325. It is only when an individual defies the subpoena and is held in contempt that the proceeding "becomes so severed from the main proceeding as to permit an appeal." *Id.* at 328.

Orders enforcing administrative subpoenas, however, are an exception to this general rule. *See id.* at 329; *Reich v. Nat'l*

---

[40] We have noted in dicta that forcible entry is not what is normally contemplated. *See In re Establishment Inspection of Skil Corp.*, 846 F.2d 1127, 1132 (7th Cir. 1988) (noting that the Consumer Product Safety Commission "has never suggested that it could or would proceed" with a forcible execution of an administrative warrant and that "the standard method of enforcing such warrants" was through contempt proceedings).

*Eng'g & Contracting Co.*, 13 F.3d 93, 95 (4th Cir. 1993). Enforcement of administrative subpoenas

> may be deemed self-contained, so far as the judiciary is concerned—as much so as an independent suit in equity in which appeal will lie from an injunction without the necessity of waiting for disobedience. After the court has ordered a recusant witness to testify before [an administrative agency], there remains nothing for it to do. Not only is this true with respect to the particular witness whose testimony is sought; there is not, as in the case of a grand jury or trial, any further judicial inquiry which would be halted were the offending witness permitted to appeal.

*Cobbledick*, 309 U.S. at 330.

We see no justification, however, for extending this rule beyond the context of enforcement of administrative subpoenas. Both administrative subpoenas and administrative warrants are investigatory tools, but there are important differences in the role they play in the administrative process. Administrative subpoenas usually do not raise the same Fourth Amendment concerns as administrative warrants. In *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 414 (1984), the Court explained that the enforcement of administrative subpoenas does not involve "the effort of the government inspectors to make nonconsensual entries into areas not open to the public," and thus administrative subpoenas are distinguishable from administrative warrants, such as the one in *Barlow's*.

The enforcement process for administrative subpoenas differs from the enforcement process for administrative warrants. An administrative subpoena is issued by the agency. If a party chooses not to comply, the administrative agency must seek judicial enforcement with notice to the subpoenaed party. *See, e.g.*, *United States v. Clarke*, 573 U.S. 248, 253 (2014) (describing "the requisite judicial [enforcement] proceeding" as "adversarial," "not *ex parte*"). The subpoenaed party, therefore, has an opportunity to be heard during the enforcement proceeding itself. Contempt proceedings—or a subsequent challenge in administrative proceedings—is not necessary to distill the issues for appellate review.

The same is not true for the enforcement of administrative warrants. OSHA may apply for, and obtain, an administrative warrant without notice to the affected party. Once the warrant is obtained, OSHA may execute it. The first opportunity that a party subject to the warrant may have to contest the basis or scope of the warrant usually comes when it defies the warrant. In such cases, a contempt proceeding, or a challenge to the warrant in later administrative proceedings, is necessary to vet the underlying issues of authority, probable cause, and scope.

In short, the cases involving immediate appeals of administrative subpoenas do not represent an exception to the finality rule of § 1291. Rather, those cases are appealable because the orders concerning the administrative subpoenas are "[t]he last order in a proceeding," thus making the district court's orders "final decision[s] appealable under 28 U.S.C. § 1291." *In re Establishment Inspection of Skil Corp.*, 846 F.2d 1127, 1129 (7th Cir. 1988). Here, however, there remain significant ongoing proceedings in the district court that afford the contesting

party a full opportunity to set forth its objections to the warrant in an adversarial context. Both the Secretary's motion for contempt and motion to toll the statute of limitations are pending before the district court.[41] We cannot ignore these substantive, and potentially dispositive, motions. This ongoing litigation renders the district court's enforcement order nonfinal. We, therefore, do not have jurisdiction over the present appeal under § 1291.[42]

---

[41] With respect to the latter, it is AMC's contention that the district court is without authority to toll the statute of limitations, and, in the absence of tolling, the Secretary has no authority to execute the warrant at issue.

[42] As it did in the district court, AMC maintains that our decision in *In re Establishment Inspection of Kohler Co.*, 935 F.2d 810 (7th Cir. 1991), conclusively establishes a right to a judicial pre-enforcement challenge of an administrative warrant, including the right to an immediate appeal. AMC focuses on one sentence of that decision, which states: "That warrant is reviewable in the district court, and subsequently in the Court of Appeals, until OSHA completes its inspection." *Id.* at 814.

    This single sentence, read in context, cannot bear the weight that AMC attaches to it. First, *Kohler* did not involve a pre-enforcement challenge; rather, the warrant in *Kohler* already had been executed. The issue of a party's pre-enforcement rights simply was not before us. Second, the language at issue arises in a discussion of whether applying the exclusionary rule in proceedings before the OSHA Review Commission would raise issues of separation of powers. *Id.* It did not, we explained, because "[w]hat OSHA view[ed] as one proceeding" was "really two distinct cases":

> The first involves OSHA's enforcement program; OSHA enforcement actions are reviewable in the first instance by the Review Commission, then by federal Courts of Appeals. To proceed with an inspection, OSHA must initiate

(continued … )

a second proceeding to obtain a search warrant from a
federal district court. That warrant is reviewable in the
district court, and subsequently in the Court of Appeals,
until OSHA completes its inspection.

*Id.* In the context of that discussion, there was no reason for us to detail all
the steps necessary to secure a pre-execution challenge to an administrative warrant, namely refusing entry and converting the warrant proceeding into contempt proceedings. *See In re Establishment Inspection of Skil Corp.*, 846 F.2d at 1132 (explaining the "standard method" of "allowing the target of an administrative warrant to forbid entry and thereby convert the warrant proceeding into a contempt proceeding"). Finally, as we already have noted, *Kohler* involved an administrative warrant that already had been executed. The warrant was executed because we lifted the stay that had been granted by the district court. If Kohler had an absolute right to a pre-inspection appeal, we presumably would have kept the stay in place, or at least noted our error in lifting the stay. Thus, *Kohler* cannot be read as establishing a right to pre-enforcement judicial review of administrative warrants.

AMC also invites our attention to *Wedgewood Village Pharmacy, Inc. v. United States*, 421 F.3d 263 (3d Cir. 2005). In *Wedgewood*, the Third Circuit concluded that the district court's order refusing to quash an administrative warrant issued under the Food, Drug, and Cosmetic Act was "tantamount to a final order" because denying immediate review would put Wedgewood at risk for criminal prosecution under a provision of the Act that criminalizes the refusal to permit an inspection. *Id.* at 268. The court explained that it "s[aw] no reason to require Wedgwood to risk criminal prosecution merely to obtain appellate review of an administrative warrant." *Id.* According to the Third Circuit, forcing a party to subject itself to criminal prosecution was materially different from requiring a party to subject itself to contempt proceedings. It explained that the

penalties for civil contempt are limited to measures that
may be appropriate to compel compliance with the underlying order and to compensate the opposing party for
losses sustained as a result of the noncompliance. Those

(continued … )

## Conclusion

For these reasons, we dismiss AMC's appeal for lack of appellate jurisdiction.[43]

APPEAL DISMISSED

---

penalties are therefore proportional to the noncomplying party's resistance to the warrant. Here, however, the penalties Wedgewood could face for noncompliance could potentially far exceed the harm resulting from its noncompliance. Accordingly, we conclude that the District Court's order refusing to quash the administrative warrant is tantamount to a final order.

*Id.* (citation omitted). By contrast, the OSH Act does not subject an employer to criminal penalties for refusing to permit an inspection, and AMC is not at risk for criminal prosecution.

[43] Because we dismiss on jurisdictional grounds, we have no occasion to comment or rule upon AMC's other arguments concerning whether the warrant was supported by probable cause, whether it was overbroad, or whether the magistrate judge exceeded his authority in issuing the August 20 order.